IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MARGARET WILLIAMS, | ) |
|     Plaintiff, | ) |
| vs. | ) CASE NO. 1:07CV1108-MHT |
| WAL-MART STORES, INC., ET AL., | ) |
|     Defendant. | ) |

### WAL-MART'S REPLY TO PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Regardless of how Plaintiff attempts to categorize the credibility of the witnesses or supplement the record with additional testimony, she cannot overcome the overriding problem with her case—there is no evidence of actual or constructive notice by Wal-Mart of the hazardous substance on which she alleges she slipped. Absent such notice, Wal-Mart is entitled to summary judgment.

Whether Wal-Mart employees "could have" seen the water on the floor is of no consequence.[1] *See Vargo v. Warehouse Groceries Management Mgt., Inc.*, 529 So. 2d 986 (Ala. 1988) (speculation as to notice is insufficient to support premises claim); *S. H. Kress & Company v. Thompson*, 267 Ala. 566 (Ala. 1957) ("it is still incumbent upon appellee to prove, or to offer evidence from which it can reasonably be said, that the foreign substance was on the floor at the time of the inspection"). Having no evidence of actual knowledge, Plaintiff is left with the task of demonstrating that Wal-Mart should

---

[1] The affidavits of Eloise S. Ealum and James Thomas Ealum, Jr. submitted by Plaintiff (Doc. 28, Ex. A & B) should be stricken from the record on grounds that the purported witnesses were not disclosed in Plaintiff's Initial Disclosures. Nevertheless, even if the Court considers the affidavit of Mrs. Ealum, her statement that "It is my opinion a cashier *could easily have seen* the water had they been monitoring the floor in the area" is speculation and does not sufficiently establish that a material question of fact exists as to whether Defendants had notice of the alleged hazard. (emphasis added) (Doc. 28, Ex. A, ¶ 6.)

have noticed the hazard through evidence indicating the length of time the water may have been on the floor. Here, however, there is no evidence that the water was dirty, tracked, or exhibited any other characteristics which could prove that it had been on the floor for an extended period of time to import constructive notice. *See Cash v. Winn-Dixie Montgomery, Inc*., 418 So. 2d 874, 876 (Ala. 1982.)

Further, Plaintiff's argument presupposes the existence of a videotape and that it was lost or destroyed by Wal-Mart. The testimony of Wal-Mart Assistant Manager, Deborah Elmore, does not support such an assumption.

> Q: Do you know if any video surveillance film exists that would depict this event and the few minutes before and the few minutes after Ms. Williams fell?
>
> A: No.
>
> Q: And the way I phrased that, I probably need to get some clarification, because I asked you if you knew if any existed. Can you tell me that there are no such tapes in existence? Do you see what I'm saying?
>
> A: To my knowledge, there are no tapes in existence.
>
>     \*    \*    \*    \*    \*
>
> A: I don't recall exactly what happened that day with the tape. I don't recall if the camera shot for that was not working. I don't recall.
>
> Q: Who would be in the best position to know the status of any videotape that exists of this event —
>
> A: The store manager.
>
>     \*    \*    \*    \*    \*
>
> A: Michael Reed.
>
> Q: Would that tape have been sent to CMI?
>
> A: If we had it.

>   Q:  Why wouldn't you have it?
>
>   A:  If the camera shot wasn't working, we wouldn't have a tape of it.
>
>   \*   \*   \*   \*   \*
>
>   Q:  Have you had a history of having problems with that video monitoring system?
>
>   A:  On occasion.

(Deposition of Deborah Elmore, attached as Exhibit "A," pp. 39, 42-43.) Plaintiff never confirmed that a camera captured the area where Plaintiff fell on the particular day in question, nor did she provide any evidence to support her accusations that, if a video existed, Wal-Mart lost or destroyed it. Plaintiff also failed to follow up with Mr. Reed who "would be in the best position to know the status of any videotape." Summary judgment is due in favor of Wal-Mart.

Respectfully submitted,

/s/ Jennifer A. Doughty
W. PEMBLE DELASHMET        (DELAW0873)
CHAD C. MARCHAND           (MARCC5089)
JENNIFER A. DOUGHTY        (DOUGJ5407)
Attorneys for Defendant, Wal-Mart Stores East, LP

OF COUNSEL:

DELASHMET & MARCHAND, P.C.
Post Office Box 2047
Mobile, AL  36652
Telephone:   (251) 433-1577
Facsimile:   (251) 433-1578

3

**CERTIFICATE OF SERVICE**

      I hereby certify that I have on this day August 7, 2008, filed the foregoing with the Clerk of the court using the appropriate electronic filing system, which will send notice to the following counsel of record:

William Jemison Mims
Rachael Gilmer
Levin, Papantonio, Thomas, Mitchell, Echsner & Proctor, PA
P. O. Box 12308
Pensacola, FL  32591

Larry Givens
Cochran, Cherry, Givens, Smith, Lane & Taylor, P.C.
Post Office Box 927
Dothan, Alabama  36302

                                        /s/ Jennifer A. Doughty
                                        OF COUNSEL

```
             IN THE U. S. DISTRICT COURT
            MIDDLE DISTRICT OF ALABAMA
                  SOUTHERN DIVISION


MARGARET WILLIAMS,

    PLAINTIFF,

    VS.                    CASE NO. 1:07CV1108-MHT

WAL-MART STORES, INC.,

    DEFENDANT.


    The deposition of DEBORAH ELMORE, taken
by the Plaintiff, pursuant to the Federal
Rules of Civil Procedure, before Stacey
Watkins, RPR, and Notary Public, State at
Large, at the Geneva County Courthouse,
Geneva, Alabama, on the 28th day of May,
2008, at 12:30 p.m., CDT, pursuant to notice.


                  * * * * *

APPEARANCES:

FOR THE PLAINTIFF:          FOR THE DEFENDANT:

MR. LARRY GIVENS            MS. JENNIFER A. DOUGHTY
Attorney at Law             Attorney at Law
Dothan, Alabama             Mobile, Alabama
```

COPY



EXHIBIT A

```
 1        A    Yes.
 2        Q    That report?
 3        A    Yes.
 4        Q    Okay.  And then, the statements
 5   would be the one given by the -- we're going
 6   to call it Stephanie Edelstein until we find
 7   out differently.  But, that one, and then,
 8   also, I believe a Wal-Mart employee gave a
 9   written statement, as well?
10        A    Yes.
11        Q    Annie Newman?
12        A    Yes.
13        Q    Anything else?
14        A    No.
15        Q    Have you seen any video
16   surveillance of this event?
17        A    No.
18        Q    Do you know if any video
19   surveillance film exists that would depict
20   this event and the few minutes before and the
21   few minutes after Ms. Williams fell?
22        A    No.
23        Q    And the way I phrased that, I
24   probably need to get some clarification,
25   because I asked you if you knew if any
```

```
 1   ever review the videotape that would have
 2   been created the few minutes before and the
 3   few minutes after Ms. Williams fell?
 4        A    Normally, yes.
 5        Q    Then what happens to that tape?
 6        A    I don't recall exactly what
 7   happened that day with the tape.  I don't
 8   recall if the camera shot for that was not
 9   working.  I don't recall.
10        Q    Who would be in the best position
11   to know the status of any videotape that
12   exists of this event --
13        A    The store manager.
14        Q    -- and the few minutes before and
15   after?
16             MS. DOUGHTY:  Object to the form.
17        Q    The store manager?
18        A    (Witness nodding head in
19   affirmative.)
20        Q    What's his name again?
21        A    Michael Reed.
22        Q    Would that tape have been sent to
23   CMI?
24        A    If we had it.
25        Q    Why wouldn't you have it?
```

```
 1        A    If the camera shot wasn't working,
 2   we wouldn't have had a tape of it.
 3        Q    Do you know of any problems that
 4   y'all were having with the --
 5        A    I don't recall that particular day.
 6        Q    -- system around that time?
 7        A    I don't recall that particular day.
 8        Q    Have you had a history of having
 9   problems with that video monitoring system?
10        A    On occasion.
11        Q    How do the problems manifest
12   themselves?
13        A    Actually, sometimes, the camera
14   shots don't work, and we have to have them
15   come in and repair them.
16        Q    Who repairs the system?
17        A    The LP, loss prevention,
18   associates.
19        Q    So, Wal-Mart has an in-house group
20   that takes care of surveillance cameras and
21   recording equipment for the individual
22   stores?
23        A    Correct.
24        Q    Did you participate in the
25   investigation of this event?
```