IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

MAGARET WILLIAMS )
)
    Plaintiff, )
)
v. )  Case No.: 1:07CV1108-MHT
)
WAL-MART STORES EAST, L.P. )
)
    Defendant. )

PLAINTIFF'S SUR-REPLY TO THE DEFENDANT'S
REPLY TO PLAINTIFF'S BRIEF IN OPPOSITION TO SUMMARY JJUDGMENT

Plaintiff first wishes to address the defendant's suggestion that Eloise and Thomas Ealum come as a surprise. Both Rev. and Mrs. Ealum were mentioned in depositions of the plaintiff and her sister taken by defense counsel. The following exchange took place during the deposition of Marie Strickland, Mrs. Williams' sister. This deposition took place on May 1, 2008. Questioning is by counsel for the defendant.

> Q.    You mentioned your sister. Who else do you recall being around, attending to your sister, in that vicinity?
>
> A.    Well, there was a paramedic from -- I think he was, like, from Slocomb. He came in to help Margaret. And our pastor of our church ad his wife came in. When they saw me run back to Wal-Mart, they came in.
>
> Q.    You said the pastor?
>
> A.    Our pastor. Yes.

(Strickland Dep., p.11, ln. 23 to p.12, ln.7)

Clearly then, counsel for the defendant can demonstrate no prejudice when the presence of the pastor and his wife were known no later than May 1, 2008. That defense counsel did not make further inquiry as to the pastor's name, address or other identifying information is a

result of decisions made by defense counsel in the course of deposing Mrs. Strickland. Nonetheless, the fact the Ealums were there was known to the defendant well before the summary judgment motion was filed and plaintiff submitted the subject affidavits.

With regard to the defendant's observations regarding the missing video tape, Plaintiff respectfully refers to he Court to the extensive testimony cited and provided by Plaintiff in her initial Brief in Opposition. That testimony will speak for itself and the efforts of counsel for plaintiff to discover the status of the tape will be well illustrated. Suffice it to say, Mrs. Elmore clearly indicated all of the managers were responsible for the video tape and since she is the manager that took the incident report, it is certainly reasonable to conclude that if she could not provide the whereabouts of the tape (having no recollection of even looking at it), it is highly doubtful anyone else could.

The defendant cites *S.H. Kress & Company v. Thompson*, 103 So.2d 171, (Ala. 1958) in further support of its position. Plaintiff refers the Court to *Foodtown Stores, Inc. v. Patterson*, 213 So.2d 211 (Ala. 1968). The defendant in *Foodtown* quoted extensively from the *Kress* case in support of its position that a jury verdict rendered in favor of the plaintiffs should be overturned. The Alabama Supreme Court expressed its disagreement with Foodtown's position and upheld the jury's verdict. In so doing, the Court stated that

> [w]e do not think that what we define as a 'stop watch' rule should be adopted by the court in actions such as these by holding, as a matter of law, any particular time shall govern as to whether the sweeping, cleaning, or lack of sweeping and cleaning is negligence. Each case should be decided upon its specific facts. We hold the rule to be that no absolute or positive invariable rule can be announced that can apply to each case, and which will correctly define the duties of store keepers (invitors) in all cases, or the duties of the invitees (customers). The duties and liability of the invitor (store keeper), and the duties, risks and rights of the invitees

> (customers) must of necessity depend upon the circumstances
> of each particular case.

*Foodtown* at 216.

The defendant's reliance upon *Vargo v. Warehouse Groceries Management* 529 So.2d 986 (Ala. 1988) is misplaced for the same reason as that found in the cases cited by the defendant in its initial brief in support of the motion for summary judgment. The circumstance in *Vargo* did not involve an instance where the defendant's employee(s) were located in close proximity to the place of the fall as was the case herein. This factual difference is pivotal. The cases indicate a storekeeper may be found negligent when they are "delinquent" in discovery a hazard. Where the employees are at the scene of the fall when the fall occurs, it is the jury's role to decide if those employees were delinquent. The defendant asserts there is no constructive notice. A jury would be well within the rule of reason to conclude there was notice when it learns not one, but several, Wal-Mart employees were on the scene, and had been on the scene long before Mrs. Williams fell.

Respectfully submitted this, the 8th day of August, 2008.

                                                  **COCHRAN, CHERRY, GIVENS,**
                                                  **SMITH, LANE & TAYLOR, P.C.**

                                                  /s/ Larry Givens
                                                  Larry Givens(Giv012)
                                                  **ASB No: ASB-9077-N50L**
                                                  P. O. Box 927
                                                  Dothan, AL  36302
                                                  (334) 793-1555 – Phone
                                                  (334) 836-2500 – Facsimile

# CERTIFICATE OF SERVICE

I hereby certify that on August 8, 2008, I electronically filed the foregoing Plaintiff's Sur Reply to Defendant's Reply to Plaintiff's Brief In Opposition to Motion For Summary Judgment with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to:

W. Pemble DeLashmet
DeLashmet & Marchand, P.C.
P.O. Box 2047
Mobile, AL  36652
wpd@delmar-law.com

Jennifer Allen Doughty
DeLashmet & Marchand, P.C.
jad@delmar-law.com

Chad Christopher Marchand
DeLashmet & Marchand, P.C.
ccm@delmar-law.com

/s/Larry Givens
LARRY GIVENS

1    Q    Betty. And Betty picked up the bag
2 that had the milk in it, and it was leaking
3 at that time?
4    A    Yes.
5    Q    Did any of that leaking milk spill
6 onto the floor? Obviously, it was leaking.
7 It must have dropped somewhere. But, do you
8 recall?
9    A    I don't recall.
10    Q    Did your sister tell you what was
11 hurting?
12    A    Yes.
13    Q    What did she say?
14    A    She said her leg was hurting.
15    Q    Do you recall if it was her right
16 leg or her left leg?
17    A    Right now, I'm not sure.
18    Q    It's okay. So, you're not sure?
19    A    I think it was her right leg.
20    Q    Were there other people around at
21 this time?
22    A    Yes.
23    Q    You mentioned your sister. Who
24 else do you recall being around, attending to
25 your sister, in that vicinity?

```
 1        A    Well, there was a paramedic from --
 2   I think he was, like, from Slocomb.  He came
 3   in to help Margaret.  And our pastor of our
 4   church and his wife came in.  When they saw
 5   me run back to Wal-Mart, they came in.
 6        Q    You said the pastor?
 7        A    Our pastor.  Yes.
 8        Q    Who happened to be at Wal-Mart at
 9   the same time?
10        A    Yes.  And I guess the manager at
11   Wal-Mart.  There was a man, a woman.  There
12   was a lady -- woman from Wal-Mart taking
13   pictures.  And there was a lady that had seen
14   the accident.  I don't remember her name.
15   She was there.  There was a crowd of people.
16   That's all I remember.
17        Q    Okay.  Did you talk to any of the
18   Wal-Mart employees?
19        A    The lady with the clipboard.  Yes,
20   I talked with her.
21        Q    You provided a statement?
22        A    Yes.
23        Q    You had exited the store just
24   within moments of your sister?
25        A    Yes.
```