IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION

```
MARGARET WILLIAMS,          )
                            )
    Plaintiff,              )
                            )     CIVIL ACTION NO.
    v.                      )      1:07cv1108-MHT
                            )          (WO)
WAL-MART STORES, INC.,      )
                            )
    Defendant.              )
```

OPINION

Plaintiff Margaret Williams brought this lawsuit against defendant Wal-Mart Stores, Inc.[1] in state court for injuries she says she suffered when she slipped and fell in a Wal-Mart store. Williams asserts state-law claims of negligence and wantonness. Wal-Mart removed this case to federal court pursuant to 28 U.S.C. §§ 1332 and 1411 which grant this court removal jurisdiction when the parties have completely diverse state citizenships and the amount in controversy exceeds $ 75,000. This matter is now before the court on Wal-Mart's motion for

---

1. Williams has incorrectly identified defendant as Wal-Mart Stores, Inc., in stead of Wal-Mart Stores, East, L.P.

summary judgment. For the reasons stated below, the motion will be granted.

## I. SUMMARY-JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The court's role at the summary-judgment stage is not to weigh the evidence or to determine the truth of the matter but rather to determine only whether a genuine issue exists for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In doing so, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## II. BACKGROUND

On March 11, 2007, Williams entered the Wal-Mart in Geneva, Alabama with her sister in order to buy a gallon of milk. As she was leaving the store, she slipped and fell, injuring her hip and knee and breaking her leg. She did not see what caused her to slip, but her sister, who had already left the store but came back in when she heard about the incident, reported that she saw a clear puddle of water near where Williams had fallen. Williams's sister did not, however, see the puddle when she left the store herself a minute earlier. Williams's pastor and his wife were also shopping in Wal-Mart at the time; they came to the location where Williams had fallen and also reported seeing a puddle of water. Several Wal-Mart employees on the scene did not see any puddle of water and stated that no clean-up was needed after the accident because there was no water present.

The Geneva Wal-Mart is not a "superstore" with dozens of check-out aisles and multiple exits, but rather a smaller store with four check-out aisles, eight cash registers, and only one exit. Williams slipped as she was about to exit the store, so the fall took place between the cash registers and the exit. Three to five cashiers, as well as the store manager, were working in the area at the time. At least a couple of the cashiers on duty at the time would have been able to see the area where Williams fell; however, none of Wal-Mart's employees reported actually seeing Williams fall.

It is Wal-Mart's policy and practice to survey the entire store every two hours to look for and address potential hazards. One employee passed through the area in question earlier in the morning of Williams's fall, and, although the cashiers' primary duty is to check customers out, they are also supposed to monitor the front area of the store, which would include the exit, for safety issues.

Finally, although Wal-Mart reported a general practice of maintaining surveillance tapes, which might have recorded the incident, the store was unable to produce such tapes in discovery. A store supervisor could not explain the absence of the tapes but said that she had never seen any tapes of the incident and suggested that the camera may not have been working on that day.

### III. DISCUSSION

#### A. Williams's Negligence Claim

The only point of contention at this stage is whether Wal-Mart was negligent in failing to discover and remove the puddle of water.[2] Under Alabama law, a store is "under a duty to exercise reasonable care to provide and maintain reasonably safe premises" for the use of

---

2. Wal-Mart does not concede that the puddle of water existed; that Williams fell because of it; or that she injured herself as a result. It does concede, however, that she has presented enough evidence to raise a genuine issue of material facts as to these issues.

customers.  Maddox v. K-Mart Corp., 565 So.2d 14, 16 (Ala. 1990).  A store is not an insurer of a customer's safety and is liable only if it negligently fails to keep the premises in a reasonably safe condition.  Id.  Specifically, as this is a slip-and-fall case, Williams may prove liability if she can establish one of three circumstances: (1) Wal-Mart had actual notice that the puddle was on the floor; (2) the puddle had been on the floor for a sufficiently long period of time so that the store had constructive notice of the hazard; or (3) the store was otherwise delinquent for failing to discover and remove the puddle of water.  See Maddox, 565 So.2d at 15; Cox v. Western Supermarkets, Inc., 557 So.2d 831, 832 (Ala. 1989); Richardson v. Kroger Co., 521 So.2d 934, 935-36 (Ala. 1988).

   Actual Notice:  Williams is not able to show actual notice.  She does not offer any affirmative evidence to suggest that Wal-Mart had actual notice of the puddle, and she does not argue actual notice.

<u>Constructive Notice</u>:  Williams does not provide any length-of-time evidence to raise a material question of fact warranting a trial on whether Wal-Mart had constructive notice of the puddle of water.  In a slip-and-fall case, a plaintiff may prove constructive notice through evidence tending to show the puddle or condition had been present for a sufficient period of time that the defendant should have been aware of its presence.  <u>See</u>, <u>e.g.</u>, <u>Cash v. Winn-Dixie Montgomery, Inc.</u>, 418 So.2d 874, 875 (Ala. 1982); <u>Maddox</u>, 565 So.2d at 16.  A plaintiff is not required to offer direct evidence as to the length of time a foreign substance has remained on the floor; a jury may infer the length of time from evidence that the substance is "dirty, crumpled, or mashed, or has some other characteristic which makes it reasonable to infer that the substance has been on the floor long enough to raise a duty on the defendant to discover and remove it." <u>Cash</u>, 418 So.2d at 876.  This can be a fairly low standard.

In <u>Kenney v. Kroger</u>, 569 So.2d 357 (Ala. 1990), the Alabama Supreme Court reversed summary judgement for the defendant, finding that evidence that the aisle may not have been cleaned for almost two hours and that the puddle of Pine-Sol had grown large enough to saturate significant portions of Kenney's clothing raised a genuine issue of fact about constructive notice, permitting the inference that the defendant had been negligent in failing to discover and clean the spill. Williams, however, offers no evidence tending to show the puddle had been on the floor for any amount of time greater than a moment.  Such evidence might have been testimony that the water was muddied, or that the puddle was particularly large, or that footprints showed that others had already walked through the puddle before Williams.  Here, there is no such evidence.  In fact, the testimony that the puddle was "clear" and that Williams's sister failed to notice it when she exited the store a

minute earlier suggests that, if anything, the puddle had not been on the floor for very long.

Otherwise Delinquent: Williams does not provide any evidence to suggest that Wal-Mart was "otherwise delinquent" in failing to discover and remove the puddle of water. Plaintiffs have been able to show delinquence and survive summary judgment, without length-of-time evidence, in two general categories: cases in which the defendant was responsible for the hazardous substance on the floor; and cases in which the fact that it was raining outside suggests that the defendant should have been aware of the potential for water to collect on the floor.

The first category includes cases like Cox v. Western Supermarkets, Inc., 557 So.2d 831 (Ala. 1989), in which the water on the floor appeared to have dripped from ice used to keep the vegetables fresh. The store was aware that water occasionally fell on the floor in this section and, therefore, placed rubber mats in the area and

9

assigned people to watch it. As such, the Alabama Supreme Court stated, the supermarket was on notice that water was a problem in the produce section and may have been negligent in its response. In <u>Dunklin v. Winn-Dixie of Montgomery, Inc.</u>, 595 So.2d 463, 464 (Ala. 1992), the Alabama Supreme Court found that, where the plaintiff provided evidence that water on the floor was spilled by an employee washing produce, a jury could find that the supermarket was negligent in failing to discover and clean the spill. Likewise, in <u>Howard v. Kroger Co.</u>, 752 So.2d 504 (Ala. Civ. App. 1999), the plaintiff was permitted to rely on an employee's statement that water on the floor came from the defendant's meat cooler.

Williams attempts to fit her case into the mold of <u>Howard</u> by arguing that a jury would be free to infer that the water on the Wal-Mart floor came from a cooler unit near where the incident took place. This mere suggestion, however, is insufficient because there is simply no evidence supporting the theory that the cooler

was indeed responsible for the water or malfunctioned in any way. In Howard, an employee's testimony provided the evidentiary basis for a jury to conclude that the meat cooler malfunctioned; in this case, there is no such basis. In fact, two employees reported that, to the best of their knowledge, the cooler had not needed maintenance within the 30 days before or after the incident.

In the second category, rainwater cases, Alabama courts have allowed cases to survive summary judgement without evidence that the hazardous substance had actually been on the floor for a certain length of time. In King v. Winn-Dixie of Montgomery, Inc., 565 So.2d 12 (Ala. 1990), and Neel-Gilley v. McCallister, 753 So.2d 531 (Ala. Civ. App. 1999), appellate courts overturned findings of summary judgment for the defendants, despite no length-of-time evidence, where rainwater had accumulated near the entrance of the store. In such cases, businesses are on notice that water may be tracked

in through the entrance and, therefore, can be considered negligent if the water is not adequately mopped-up.

Williams, however, cannot point to any circumstances that suggest that Wal-Mart should have been on notice that water would accumulate near the exit; nor can she point to any evidence that Wal-Mart was responsible for the water on the floor. Her only argument is that a number of Wal-Mart employees were in the vicinity when she fell and a jury could find that they were negligent in not having noticed the spill. There is no case law to support the argument that simply having employees in the vicinity provides evidence of negligence. For support, Williams cites to <u>Williams v. Bruno's, Inc.</u>, 632 So.2d 19 (Ala. 1993), in which an employee was in the vicinity when a customer fell, having either slipped on "strips" left on the floor by employees or tripped over a "kick plate" which was bent and protruding from the shelves. The court stated that "one could reasonably infer that [the employee] saw or should have seen the kick plate

12

protruding from the shelf before [the plaintiff's] fall." However, the court's reasoning did not rest on the simple fact that the employee was in the vicinity; rather, the court highlighted evidence showing that the employee--despite having passed by the location, while cleaning and buffing the floors, at least four times immediately prior to the plaintiff's fall--failed to notice and fix a condition that the defendants admitted was obvious. These facts go far beyond mere proximity and do not map well onto Williams's case. Here the employees in the vicinity were working as cashiers; were not focused on or cleaning the floors; had not passed by the area four times immediately prior to the fall; and the puddle was "clear," not obvious.

In the end, Williams fails to offer evidence raising a material question of fact warranting a trial on whether Wal-Mart had actual notice of the puddle, had constructive notice of it, or was otherwise delinquent in failing to discover and remove it. Therefore, as to her

negligence claim, summary judgment will be granted for Wal-Mart.

### B. Williams's Wantonness Claim

In her complaint, Williams also raises a claim of wantonness against Wal-Mart.  By statute, wantonness is defined as "conduct which is carried on with a reckless or conscious disregard of the rights or safety of others." 1975 Ala. Code § 6-11-20-(b)(3).  "While ordinary negligence involves inadvertence, wantonness requires a showing of a conscious or an intentional act." Hicks v. Dunn, 819 So.2d 22, 24 (Ala. 2001).

Williams has not established a genuine issue of material fact warranting a trial on her wantonness claim. In fact, beyond raising it in her complaint, she presents no facts to support a claim of wantonness and does not discuss the issue in her response to Wal-Mart's motion for summary judgment.  As concluded above, Williams has failed to establish that Wal-Mart had notice, either

14

actual or constructive, of the condition which caused her to fall. Almost by definition, Wal-Mart cannot have "consciously," "recklessly," or "intentionally" disregarded a safety hazard of which it was unaware and had no notice. In the end, Williams has provided no evidence to suggest that Wal-Mart consciously or recklessly disregarded the safety of others. Therefore, the motion for summary judgment as to the wantonness claim will be granted.

### C. The Spoilation Issue

In her response to Wal-Mart's motion for summary judgment, Williams argues that the court should consider certain unavailable evidence, namely, the surveillance tapes from the morning of the accident. She argues that their absence "raises the specter of evidence spoilation." Pl.'s br. in opp'n to summ. j., 16.

"[A]n adverse inference is drawn from a party's failure to preserve evidence only when the absence of that

15

evidence is predicated on bad faith." Bashir v. Amtrack, 119 F.3d 929, 931 (11th Cir. 1997). "Mere negligence is not enough, for it does not sustain an inference of consciousness of a weak case," Vick v. Texas Employment Com'n, 514 F.2d 734, 737 (11th Cir. 1975) (quoting McCormick, Evidence § 273 at 660-61 (1972), 31A C.J.S. Evidence § 156(2) (1964)); the party claiming spoilation must present "probative evidence" that the relevant materials were "purposely lost or destroyed." Bashir, 119 F.3d at 931.

The testimony in this case suggests that surveillance video is usually taken of the cash registers and that such tapes might have shown the area in which the fall took place. However, the only manager deposed regarding the tapes testified that she never saw any tapes after the accident and that, to her knowledge, the tapes did not exist; she hypothesized that the camera was not working on the day in question and stated that the store occasionally had problems with the tapes; and she said that the store manager would be in the best position to know what had

16

happened with the tapes, why they might have been missing, or whether the cameras were working on the day of Williams's fall.  Williams never followed-up on these leads, either by inquiring further about the functioning of the cameras or by deposing the store manager.  At this point, Williams has not provided probative evidence that the tapes actually did exist; that they would have recorded the area in question; or that Wal-Mart purposely lost or destroyed them.  Therefore, the court cannot draw the adverse inference against Wal-Mart that Williams requests.

***

Because Williams has failed to establish any genuine issues of material fact warranting a trial on either her negligence or wantonness claims, summary judgment will be entered against her on all claims.

An appropriate judgment will be entered.

DONE, this the 20th day of October, 2008.

　　　　　　　　　　　　　　 /s/ Myron H. Thompson
　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE